Judgment rendered November 17, 2021.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,130-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

COMMUNITY TRUST BANK                    Plaintiff-Appellant

versus

ALL SERVICE ELECTRICAL                  Defendants-Appellees
CONTRACTING, L.L.C., BRIAN
W. SIMS AND MARY BETH
SIMS

* * * * *

Appealed from the
Second Judicial District Court for the
Parish of Claiborne, Louisiana
Trial Court No. 39137

Honorable Jenifer Ward Clason, Judge

* * * * *

HAYES, HARKEY, SMITH &                  Counsel for Appellant
CASCIO, L.L.P.
By:  Thomas M. Hayes, III

WOOD LAW FIRM, L.L.C.
By:  R. Douglas Wood, Jr.


COLVIN, SMITH, MCKAY & BAYS             Counsel for Appellees,
By:   James Henry Colvin, Jr.          All Service Electrical
      Daniel N. Bays, Jr.              Contracting, L.L.C., and
                                       Brian Sims

NEWMAN, OLIVEAUX & MAGEE, L.L.P.     Counsel for Appellee,
By:   Darrell Oliveaux                   Mary Beth Sims

\* \* \* \* \*

Before GARRETT, STONE, and THOMPSON, JJ.

GARRETT, J., concurs with written reasons.

THOMPSON, J., concurs with the majority for the reasons assigned by J. GARRETT.

**STONE, J.,**

This civil appeal arises from the Second Judicial District Court in Claiborne Parish, the Honorable Jenifer Ward Clason presiding. The dispute in this case arises from a promissory note with respect to which All Service Electrical Contracting, L.L.C. ("ASEC") is the maker and Community Trust Bank ("CTB") is the holder. The plaintiff, CTB, appeals a judgment in favor of the defendants/plaintiffs-in-reconvention, ASEC and Brian W. Sims ("Brian"), in the amount of $206,000, plus attorney fees and costs. The trial court declared the loan agreement underlying the promissory note a nullity because Mary Beth Sims, Brian's wife and business partner at the time, forged his signature on the loan agreement. The trial court further held that the forged loan agreement caused the financial failure of ASEC and entitled Brian to recover damages from CTB.

For the following reasons, the trial court judgment is reversed, and this case is remanded with instructions to enter judgment for CTB.

## FACTS

ASEC was formed by Mary Beth Gilmore (later Mary Beth Sims) and her then-boyfriend and business partner, Brian Sims, on August 16, 2006.[1] They agreed that Mary Beth would own a 60% interest in ASEC, and that Brian would own a 40% interest. ASEC was organized as a member managed LLC and was in the business of industrial electrical contracting. Brian performed the electrical work and supervised employees, while Mary Beth handled financing, banking, bookkeeping and bill payment.

---

[1] Mary Beth and Brian married on May 31, 2008, and divorced on March 17, 2011.

Initially, ASEC had checking and other accounts at Bancorp South, where Mary Beth worked. ASEC also had a $100,000 line of credit at First Guaranty Bank ("FGB"), which was guaranteed by Brian's friends, the Lonadiers. In 2007, Mary Beth opened an ASEC checking account at First Louisiana Bank ("FLB") to handle the ASEC payroll. In 2008, the Lonadiers requested that they be removed as guarantors of the ASEC loan at FGB. Mary Beth and Brian both testified that Mary Beth was responsible for that task. In 2009, Mary Beth arranged to pay off the line of credit at FGB (which had a balance of $74,000)[2] by obtaining a $75,000 loan to ASEC from FLB, which was embodied in the promissory note.[3]

In connection with that loan, FLB's Vice President, David Booker ("Booker"), notarized a personal guaranty for this loan, which bore Brian's signature. However, Mary Beth testified that she signed Brian's name to the personal guaranty, and Brian denied ever having authorized Mary Beth to sign the personal guaranty on his behalf. Booker testified that he could not recall the circumstances of his notarization of the signature. He surmised, however, that he had permitted Mary Beth to take the commercial guaranty home for Brian to sign, and that he later notarized Brian's signature on belief that Brian had actually signed it. On September 10, 2010, CTB acquired FLB and thus became the creditor on the $75,000 loan to ASEC.

The Sims divorced in 2011. Thereafter, ASEC defaulted on the $72,949 outstanding balance owed to CTB. On December 10, 2020, CTB, as holder of the promissory note, brought suit against ASEC to recover the

---

[2] On July 10, 2008, ASEC made draws on the FLB line of credit including $10,000, used to pay Mary Beth's tax obligation to the IRS; and $10,000, used to pay Brian's tax obligation to the IRS.

[3] The promissory note has a provision allowing CTB to recover reasonable attorney's fees and court costs if it is referred to an attorney for collection.

principal balance of $72,949, plus interest and attorney fees. CTB also sought recognition of the judgment against Mary Beth and Brian on the guaranty agreements. Mary Beth did not answer CTB's petition, and CTB obtained a default judgment against Mary Beth on March 04, 2011. The default judgment was made final, was never appealed, and has not been attacked in a nullity action.

On February 1, 2011, Brian and ASEC filed a joint answer. Brian denied the authenticity of his signature on the ASEC promissory note, the personal guaranty, and other documents related to the loan.

On April 21, 2011, counsel for CTB obtained a writ of fieri facias for the seizure and sale of certain movables allegedly forming a part of the Brian and Mary Beth's community of acquets and gains. In particular, the sheriff seized: a 1992 Ford Truck, a 2008 Grizzly Tracker Marine Boat, a 2006 Mercury Marine 50 Hp motor, a 2008 Tracker Marine trailer, a 2008 John Deere zero-turn mower, and a grill. ASEC contended that the items seized by the sheriff were taken in error because they were purchased with ASEC funds and not with community funds. Brian and ASEC sought an injunction to stop the sheriff's sale, and in the alternative, demanded that Brian be paid ½ of the proceeds of the sale of the items. CTB opposed, and the parties wrangled for nearly two years over the ownership of the seized property. In May of 2013, Brian and Mary Beth voluntarily surrendered ownership of the seized movables to CTB in exchange for a $38,000 credit on the judgment.

On July 9, 2014, Brian and ASEC filed: (1) a reconventional demand against CTB; (2) a third-party demand against David Booker; and (3) a cross claim against Mary Beth. As previously mentioned, Brian and ASEC alleged that Mary Beth had forged Brian's signature on the July 10, 2009 promissory

3

note, the personal guaranty and related documents. Brian and ASEC also alleged that Booker notarized some of those forged documents and approved the loan.

The case went to a bench trial in September of 2019.[4] The trial court held that: (1) Mary Beth forged the documents related to the $75,000 promissory note; (2) David Booker's failure to verify Brian's signatures aided Mary Beth's forgeries; (3) Booker's "improper banking practices" aided concealment of Mary Beth's breach of fiduciary duty which caused the failure of ASEC, and justified awarding Brian damages against CTB for $206,000 as compensation for costs he incurred in starting a new business; (4) Brian was not entitled to recover damages for his mental anguish; (5) ASEC was not entitled to damages; and (6) CTB was not entitled to judgment against ASEC for the unpaid loan. Brian and ASEC moved for a new trial to secure an award of attorney fees. The court granted a new trial and following a hearing awarded Brian $156, 681 in attorney fees. CTB filed this appeal.

CTB makes seven assignments of error: (1) the trial court erred in declaring the loan agreement to be nullity; (2) the trial court erred in denying CTB a judgment against ASEC for the balance due on the loan, attorney fees, and interest; (3) all of the claims that Brian and ASEC asserted are prescribed ; (4) trial court erred in finding CTB liable to Brian on the ground that Booker aided Mary Beth's fraud; (5) the trial court erred in awarding damages to Brian as compensation for the cost of starting a new business after ASEC's failure; (6) the trial court erred in denying CTB's

---

[4] Five witnesses testified: Mary Beth Sims (now Mary Beth Sims Kilcrease), Randy Impson, David Booker, Steven Beard and Brian.

4

exception of no right of action regarding ASEC's claim for damages; and (7) the trial court erred in awarding attorney's fees to Brian.

**DISCUSSION**

**Validity of the loan**

CTB asserts that the trial court erred in declaring the loan agreement to be a nullity. CTB argues that the loan to ASEC was valid and enforceable because Mary Beth, as a member of a member managed LLC, possessed the authority to bind ASEC without Brian's approval.

> La. R.S. 12:1317(A) states:
>
> Each member, if management is reserved to the members…is a mandatary of the limited liability company for all matters in the ordinary course of its business other than the alienation, leases, or encumbrance of its immovables, unless such mandate is restricted or enlarged in the articles of organization or unless such member or manager lacks the authority to act for the limited liability company and the person with whom he is dealing has knowledge of the fact that he lacks such authority.

In *First Nat'l Bank v. Kellick's Catch Pen & W. Wear, LLC,* 50, 196 (La. App. 2 Cir. 11/18/15), 182 So. 3d 227, this court held that the forgery of the signature of one of the members of a multi-member LLC was immaterial because another member's signature on the document was authentic and thus was sufficient to bind the LLC under La. R.S. 12:1317. The signature of the other member, though asserted to have been forged, was "superfluous and unnecessary" to the validity of the agreement by the LLC.

In this case, the loan agreement is valid and enforceable. Mary Beth's signature alone was sufficient to bind ASEC to the loan agreement because: (1) ASEC is a member managed LLC and Mary was a member at the time she signed the documents; and (2) ASEC did not place any limitation on Mary Beth's mandatary authority in its articles of organization, nor in an

5

operating agreement, management agreement, bylaws, or otherwise. Accordingly, Mary Beth had actual authority to act on behalf of ASEC. La. R.S. 12:1317. ASEC is validly indebted and CTB is entitled to judgment against ASEC for the unpaid loan amount. The trial court erred in declaring the loan agreement a nullity.

The evidence presented at trial established that ASEC defaulted on the loan and that, under the terms of the loan agreement, CTB is entitled to judgment against ASEC in the amount of the outstanding balance plus reasonable attorney's fees, interest, and court costs.

**Brian's claims against CTB**

Because the loan agreement is valid and enforceable, neither ASEC nor Brian has a cause of action against CTB or Booker. Accordingly, all of the trial court judgment's awards to Brian were erroneous. CTB's arguments attacking those awards are pretermitted.

## CONCLUSION

For the forgoing reasons, the trial court judgment is REVERSED, and this case is REMANDED with instruction for the trial court to render judgment in favor of CTB for the balance due on the loan, plus interest, reasonable attorney's fees, and court costs.

**GARRETT, J., concurring.**

I respectfully concur in the result and provide some additional reasons to further explain why the trial court erred in this matter. The trial court committed both legal error in its analysis of the issues before it and manifest error in its interpretation of the evidence or lack thereof.

What began as a simple garden variety suit by a bank to collect the unpaid balance due on a loan became unduly complicated. After it became apparent that Mary Beth had forged Brian's name on a personal guaranty, the bank abandoned the claim it had made against Brian individually and only proceeded against the LLC. Mary Beth filed bankruptcy proceedings in the middle of the litigation, which caused more delays in the litigation. Other reasons for the delays and the protracted litigation are set forth in the majority opinion.

Of course, Mary Beth should not have forged Brian's name on the guaranty. However, the trial court erred in ruling the loan was an absolute nullity. The record is clear that Mary Beth was in charge of all of the finances involving the LLC. Whether Brian's consent for the loan was necessary is immaterial to the enforceability of the loan as to the LLC. The record is clear that the loan at issue here was ratified and confirmed by the LLC, Mary Beth, and Brian. The evidence is undisputed that the proceeds from the loan were used to pay personal tax liabilities of Mary Beth and Brian, together with some open accounts and other indebtedness owed by the LLC. They all benefited from the loan. The loan was never paid off, as the LLC only paid monthly interest payments and the loan renewed each year. After Mary Beth and Brian separated and began divorce proceedings, Brian took over the management of the LLC. The undisputed evidence

1

shows that he continued making the monthly interest payments on the loan to the bank. Under all these circumstances, the trial court erred in determining the loan was an absolute nullity and in failing to find that the loan was ratified. (*See* La. C.C. arts. 1842, 1843, and 2031.) To treat the loan as an "absolute nullity" that could never be ratified or confirmed was simply wrong. The bank is entitled to a judgment against the LLC for the unpaid balance.

Further, the bank is not liable to Brian for the large amount of damages and attorney fees awarded by the trial court. The bank was neither the cause of Brian's financial difficulties, nor was it liable to Brian for his costs in opening a new business. All of this was caused by actions on the part of Mary Beth, the breakup of the marriage, the downturn in the oil and gas industry, and Brian's failure to pay attention to the financial and business details. Further, the various items of damages ultimately awarded by the trial court to Brian can all be categorized as items of special damages. Brian introduced no documentary evidence whatsoever to prove or provide support for any of his claimed expenditures and losses. It was all speculation on his part. There was no legal or evidentiary basis for the trial court to award any of the items of special damages.

Finally, the trial court denied Brian's request for any general damages, such as inconvenience. Although I am sympathetic to Brian's plight in being involved in this protracted litigation, he did not appeal or answer the appeal. Any entitlement he may have had to an award for general damages is not before us because he did not appeal.

For the reasons contained in the majority opinion and the additional reasons expressed above, I respectfully concur in the result.

2